United States District Court
Southern District of Texas
**ENTERED**
July 21, 2021
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

| | | |
|---|---|---|
| HEIRS OF ESTATE OF ISAAC O. CHAPA, *et al.*, | § § § | |
| *Plaintiffs*, | § § | 3:20-cv-00362 |
| v. | § § | |
| CITY OF ALVIN, *et al.*, | § § | |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

In this case, the survivors of Isaac O. Chapa III bring multiple claims against the City of Alvin and several police officers. Before the court is the defendants' motion to dismiss (Dkt. 8).

## I.    Background

In July 2018, Alvin Police received a 911 call reporting that Isaac Chapa was suicidal and had fired a gun inside his home.[1] Officers responded but discovered that Chapa had fled on a motorcycle, taking the firearm with him.[2]

---

[1] Dkt 6 ¶¶ 12-13.

[2] *Id.* ¶¶ 14, 16.

1

Officers soon found Chapa's motorcycle at a nearby church.[3] They then spotted Chapa, who was still armed and threatening to kill himself.[4] The officers ordered him to throw his weapon to the ground and surrender, but did not otherwise try to calm him down or persuade him not to commit suicide.[5] After Chapa finally dropped the gun, the officers told him to get on the ground.[6] But he refused.

Instead, Chapa pleaded with the officers: "Shoot me."[7] As the situation reached a stalemate, Chapa picked up his gun and pointed it at his temple.[8] Officer Justin Garcia then shot Chapa.[9] The other officers also opened fire, and Chapa fell to the ground.[10]

The officers rushed to Chapa but—before administering aid—rolled him onto his chest and handcuffed him.[11] Then they rolled him back over again.[12] An officer

---

[3] *Id.* ¶ 15.

[4] *Id.* ¶ 16.

[5] *Id.* ¶¶ 17–18.

[6] *Id.* ¶¶ 21–22.

[7] *Id.* ¶ 23.

[8] *Id.* ¶ 24.

[9] *Id.* ¶ 28.

[10] *Id.* ¶¶ 28–29. The defendants contest whether more than one officer opened fire on Chapa, *see* Dkt. 11 at 4 n.1, but the court must accept as true the plaintiffs' allegations. *See Cummings v. Premier Rehab Keller, PLLC*, 948 F.3d 673, 675 (5th Cir. 2020).

[11] *Id.* ¶ 33.

[12] *Id.*

began first aid, but only after struggling to don a pair of medical gloves.[13] EMS soon arrived and took Chapa to the hospital, where he was pronounced dead.[14]

The plaintiffs sued the City of Alvin, as well as officers Forest J. Hill, Margaret Ray, Joey Breaux, and Justin Garcia, alleging wrongful death and civil-rights violations. Against the individual police officers, the plaintiffs assert excessive-force and delay-of-medical-care claims under 42 U.S.C. §§ 1983 and 1988. Against the City of Alvin, the plaintiffs assert municipal-liability claims, alleging failure to train, ratification, and "pattern and practice." The plaintiffs also seek punitive damages.

The defendants have moved to dismiss the plaintiffs' amended complaint under Rule 12(b)(6).[15] They argue that the plaintiffs (1) failed to allege facts to state a claim under any of their theories of liability either against the city or the individual officers, (2) failed to overcome the presumption of qualified immunity, and (3) failed to allege facts or state a claim under Texas law.

To survive a 12(b)(6) challenge, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[16]

---

[13] *Id.*

[14] *Id.* ¶¶ 34–35.

[15] Officer Joey Breaux is not a City of Alvin employee, and this motion is not made on his behalf. *See* Dkt. 8 at 1 n.3.

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The complaint is liberally construed in the plaintiff's favor, and all pleaded facts must be taken as true.[17] Mere legal conclusions will not suffice to state a claim.[18]

## II.    Analysis

### A.    Claims under Sections 1985, 1986, and 1988

42 U.S.C. § 1985 establishes a cause of action for conspiracy to interfere with civil rights. To state a claim under § 1985(3), a plaintiff must allege facts that show "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act of furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States."[19]

A § 1986 claim, which provides a cause of action for neglect in preventing a conspiracy, is dependent on a § 1985 conspiracy claim.[20]

Section 1988 does not provide a substantive right or cause of action. Rather, it allows an award for attorneys' and expert fees in an action under sections 1981–

---

[17] *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986).

[18] *See Iqbal*, 556 U.S. at 678 (2009); *see also McCoy v. Ku Ku*, No. 3:17-CV-0275, 2018 WL 4220843, at *3 (S.D. Tex. Sept. 5, 2018).

[19] *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994).

[20] 42 U.S.C. § 1986; *see Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994).

1986.[21] It also authorizes courts to apply state common law "where federal law is unsuited or insufficient 'to furnish suitable remedies,'" assuming that law is "not inconsistent with the Constitution and laws of the United States."[22]

The plaintiffs do not allege sufficient facts to state a claim under either § 1985 or § 1986.[23] Their complaint mentions no conspiracy or any act in furtherance of a conspiracy.[24] In fact, the word "conspiracy" never appears in their amended complaint. Moreover, the defendants urging this motion are the City of Alvin and some of its employees. As a matter of law, they comprise a single entity; the city and its employees cannot conspire merely among themselves.[25] The plaintiffs' claims under § 1985 and § 1986 must therefore be dismissed.

## B.  Fourteenth Amendment Delay-of-Medical-Care Claim

The plaintiffs suggest that Chapa had a right to medical care under the Fourth Amendment.[26] The Fifth Circuit has explained that a pretrial detainee has a constitutional right to medical care, "whether in prison or other custody," and that

---

[21] *Moor v. Alameda Cnty.*, 411 U.S. 693, 702–703 (1973).

[22] *Id.* (quoting 42 U.S.C. § 1988).

[23] *See* Dkt. 6 ¶ 10.

[24] *See generally id.*

[25] *Hilliard*, 30 F.3d at 653; *Swilley v. City of Hous.*, 457 F. App'x 400, 404 (5th Cir. 2012) (per curiam).

[26] *See* Dkt. 9 at 2.

right "flows from the procedural and substantive due process guarantees of the Fourteenth Amendment."[27]

Mirroring the Eighth Amendment standard, under the Fourteenth Amendment "[l]iability for failing to provide [medical care] attaches if the plaintiff can show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted."[28] "Deliberate indifference is an extremely high standard to meet"—more than mere negligence.[29] A plaintiff must prove that "officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[30]

The plaintiffs' allegations establish that the officers knew of Chapa's serious medical need.[31] But there are no allegations that the officers refused to treat him, ignored his complaints, intentionally treated him incorrectly, or betrayed a general

---

[27] *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000).

[28] *Id.*

[29] *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001); *see Wagner*, 227 F.3d at 324.

[30] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756).

[31] *Id.* at 345 n.12 ("A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)).

wanton disregard. That the officers took time to handcuff Chapa and put on medical gloves before giving first aid *might* suggest negligence, but it does not show a general disregard for Chapa's medical needs.[32] Indeed, the plaintiffs concede that medical aid was given and that an ambulance was called and took Chapa to the hospital.[33] The plaintiffs' claim for failure to provide medical care is dismissed.

### C.   Excessive-Force Claim and Qualified Immunity

An excessive-force claim under the Fourth Amendment can arise when police officers shoot someone they're trying to detain. Under the Fourth Amendment, courts evaluate the use of deadly force under an objective-reasonableness standard.[34] This requires the court to judge the use of deadly force from "the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight."[35] As the Supreme Court has explained, an officer's use of deadly force is reasonable if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."[36] But when someone poses "no

---

[32] *See Wagner*, 227 F.3d at 324 ("[D]eliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from a . . . failure to act reasonably." (quoting *Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996))).

[33] *See* Dkt. 6 ¶¶ 33–34.

[34] *Scott v. Harris*, 550 U.S. 372, 382 (2007).

[35] *See Pinder v. Skero*, 375 F. Supp. 3d 725, 740 (S.D. Tex. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[36] *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

7

immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."[37]

The plaintiffs highlight these allegations to show that the officers' use of force was unreasonable: (1) the officers knew Chapa was suicidal when they searched for him and that he had not threatened his family or anyone else—he threatened to harm only himself,[38] and (2) when the officers confronted Chapa, he pointed his gun only at himself—never at any of the officers.[39]

The defendants maintain that qualified immunity defeats the plaintiffs' excessive-force claim. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[40] "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"[41]

Because qualified immunity makes the defendant immune from suit rather than just liability, "it is effectively lost if a case is erroneously permitted to go to

---

[37] *Id.* at 11.

[38] Dkt. 6 ¶¶ 25–27.

[39] *Id.*

[40] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[41] *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

trial."[42] So whether qualified immunity applies should be decided at the earliest possible stage of the litigation, and a denial is subject to interlocutory appeal.[43] "This scheme prevents a defendant entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens."[44]

To determine whether a defendant is entitled to qualified immunity, the court conducts a two-step inquiry: (1) "whether a statutory or constitutional right would have been violated on the facts alleged" and (2) "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known."[45] The court "may tackle these questions in whatever order it deems most expeditious."[46]

The Fifth Circuit has twice recently examined whether qualified immunity protects police officers who use allegedly excessive force in subduing a suicidal person. In *Cole v. Carson*, police officers shot and severely injured a 17-year-old boy holding a gun to his head.[47] The trial court denied the officers' motion for summary

---

[42] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

[43] *Id.* at 526–27; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[44] *Ramirez v. Guadarrama*, 844 F. App'x 710, 713 (5th Cir. 2021) (per curiam).

[45] *Defrates v. Podany*, 789 F. App'x 427, 430 (5th Cir. 2019).

[46] *Ramirez*, 844 F. App'x at 713.

[47] 935 F.3d 444, 448–49 (5th Cir. 2019) (en banc), *cert. denied*, 141 S. Ct. 111 (2020). The plaintiffs rely on *Cole* in their opposition to the motion to dismiss. Dkt. 9 ¶¶ 43–46.

judgment on qualified immunity. On appeal, the Fifth Circuit, in a closely divided en banc opinion, decided the case on the second of the two qualified-immunity inquiries—the "clearly established" prong. The district court had held that at the time of the shooting,

> "the law was clearly established" that "shooting a mentally disturbed teenager, who was pointing a gun the entire time at his own head and facing away from the officer, in an open outdoor area, and who was unaware of the officer's presence because no warning was given prior to the officer opening fire, was unlawful."[48]

The Fifth Circuit reiterated that clearly established law allows deadly force "only to protect the life of the shooting officer or others," and further requires an officer to give "a warning before deadly force is used 'where feasible.'"[49] So, noting that it lacked "jurisdiction to reconsider the district court's factual determinations," and that the summary-judgment facts established that the teenager "posed no threat to the officers or others to support firing without warning," the Fifth Circuit ruled that the defendants were not entitled to summary judgment.[50]

---

[48] *Id.* at 453 (quoting *Cole v. Hunter*, 68 F. Supp. 3d 628, 643 (N.D. Tex. 2014) (the trial court's memorandum opinion)). The officers disputed this rendition of the facts, but both the trial court and the court of appeals took the facts as the plaintiffs had pleaded them.

[49] *Id.* (quoting 471 U.S. at 11–12).

[50] *Id.* (citing *Cole*, 68 F. Supp. 3d at 645); *see also id.* at 457 ("It will be for a jury to resolve . . . . The district court did not err in denying the officers qualified immunity at the summary judgment stage.")

In *Ramirez v. Guadarrama*, a mentally distraught man, Gabriel Eduardo Olivas, doused his house and himself in gasoline and threatened to kill himself and burn down the home.[51] Three police officers had responded to a 911 call and were confronting Olivas as he held a gas can.[52] "At that point," including the officers, "there were at least six other people in the house, all of whom were in danger."[53] The officers noticed an object in Olivas's hand that appeared to be a lighter.[54] Though one of the officers warned that tasing Olivas would set him ablaze, the other two discharged their tasers anyway.[55] Olivas burst into flames and the house burned down.[56] "The officers at the scene were able to evacuate the family members who had remained in the house, but Olivas was badly burned and later died from his injuries."[57]

Olivas's widow and children sued the two officers who tased him under § 1983.[58] The officers asserted qualified immunity and moved to dismiss under Rule

---

[51] *Ramirez*, 844 F. App'x at 712.

[52] *Id.* at 714.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at 712.

[57] *Id.*

[58] *Id.*

12(b)(6).[59] But the trial court denied their motion, "finding that more factual development was needed."[60] The Fifth Circuit decided the case on the first of the qualified-immunity inquiries—holding that the officers committed no constitutional violation as their use of force was reasonable under the circumstances.[61]

In reaching its decision, the *Ramirez* court stressed two points. First, that "Olivas may only have been threatening to harm himself, but he was threatening to do so in a way that put everyone in the house (and possibly others) in danger."[62] And second, that it was unclear "what alternative course the defendant officers should have followed that would not have led to an outcome free of potential tragedy."[63] Both facts distinguish *Ramirez* from *Cole*. In *Cole*, the teenager was an immediate threat to only himself, as he was not even aware of the officers approaching him; and the officers in *Cole* did have an alternative—they could've warned him to drop the gun before firing.[64]

So which of these two cases is more analogous to this one? At first blush, it

---

[59] *Id.*

[60] *Id.*

[61] *Id.* at 717.

[62] *Id.* at 716.

[63] *Id.*

[64] Again, the defendants in *Cole* disputed these facts. *See supra* note 48.

would seem more like *Cole*, as Chapa only ever threatened to harm himself. But consider what the *Cole* court held was "clearly established" as unlawful, dooming the officers' chance at qualified immunity: "'shooting a mentally disturbed [person], who was pointing a gun the entire time at his own head and facing away from the officer, in an open outdoor area, and *who was unaware of the officer's presence because no warning was given prior to the officer opening fire.*'"[65]

This case is different. Chapa was aware of the officers, and they gave warning. He was instructed to drop his weapon and he complied. But when he was then ordered to get down on the ground, he refused, begged the officers to shoot him, and picked up his gun again. He pointed it back at himself, but now the officers were facing a mentally unstable man who was defying their instructions, had rearmed himself, had already discharged his weapon at least once, and who could turn it on them in a moment. Judge Edith Jones had a point when she wrote in her *Cole* dissent:

> Neither we nor the Supreme Court has ever held that police officers confronted in close quarters with a suspect armed and ready to shoot must hope they are faster on the draw and more accurate. The increasingly risky profession of law enforcement cannot put those sworn to "serve and protect" to a *Hobson*'s choice: place their lives on the line by heroic forbearance or risk their financial security in defense of lawsuits. The Supreme Court has repeatedly stated in plain terms that the purpose of qualified immunity is to prevent precisely this

---

[65] 935 F.3d at 453 (quoting *Cole*, 68 F. Supp. 3d at 643) (emphasis added).

13

quandary.[66]

The plaintiffs bear the burden to show the inapplicability of the defendants' qualified-immunity defense.[67] In this case they have failed to do so on both qualified-immunity inquiries. First, there was no Fourth Amendment violation, as the force the officers employed was reasonable under the circumstances. Second, the officers violated no "clearly established" law. The plaintiffs' excessive-force claim is dismissed.

### D.    Municipal Liability

To establish municipal liability under § 1983, a plaintiff must show "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[68] Municipal-liability claims must be founded on a city's adoption of a policy "with deliberate indifference to the known or obvious fact that such constitutional violations would result."[69]

An official policy can manifest in two forms:

"(1) a policy, statement ordinance, regulation, or decision that is

---

[66] *Ramirez*, 935 F.3d at 457–58 (Jones, J., dissenting).

[67] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

[68] *Trammell v. Fruge,* 868 F.3d 332, 344 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)).

[69] *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

14

officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

(2) a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[70]

Municipal-liability claims require identification of a particular policymaker, as the plaintiff must distinguish acts attributed to the city from any isolated acts by individual employees.[71] The plaintiffs allege that the City of Alvin's policymaker when it comes to police officers' training is its chief of police—Robert E. Lee.[72]

### 1. Failure to Train

The plaintiffs' allegations against the City of Alvin fall into two categories: failure to train and ratification.[73] "The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement."[74]

---

[70] *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)).

[71] *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010).

[72] Dkt. 6 ¶ 44. Chief Lee was named as a defendant in the plaintiffs' amended complaint, *id.* ¶ 5, but he was never served.

[73] Dkt 6 ¶¶ 43–50. Though the plaintiffs include a heading for "pattern and practice," there are no factual allegations about pattern and practice.

[74] *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009).

According to the plaintiffs, Chief Lee and the police department failed to adequately train its officers or institute policies and procedures for how to handle suicidal persons and how to provide adequate medical care to people the police have injured.[75]

But "[d]eliberate indifference is more than mere negligence."[76] The plaintiffs must show that "the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[77] Even more, "[c]laims of inadequate training generally require that the plaintiff demonstrate a pattern."[78] The incidents forming the pattern must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, . . . [must] have involved injury to a third party."[79]

The plaintiffs have alleged no other incidents in which Alvin police officers encountered an armed suicidal person or chose to handcuff a gunshot victim before giving him first aid, much less any such incidents that amounted to constitutional

---

[75] Dkt. 6 ¶¶ 44–45, 48–50.

[76] *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000) (per curiam).

[77] *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

[78] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (citing *Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 n.34 (5th Cir. 2005)).

[79] *Davis*, 406 F.3d at 383.

violations. And by failing to show a pattern, the plaintiffs have likewise failed to show that "the need for more or different training is [] obvious[.]"[80]

Also, to state a failure-to-train claim, "a plaintiff must allege with specificity how a particular training program is deficient."[81] To be licensed as a peace officer, Texas already requires training "on de-escalation and crisis intervention techniques to facilitate interaction with persons with mental impairments."[82] The plaintiffs have not sought to explain how this training—that all Texas peace officers must receive—is insufficient.

### 2.    Ratification

The plaintiffs' attempt to assert a ratification theory is similarly unavailing.[83] The Fifth Circuit has observed that ratification "is an appropriate basis for imposing municipal liability only in 'extreme factual situations.'"[84] But the sum of the plaintiffs' ratifications are that the Alvin Police Department (1) conducted an investigation following the shooting of Chapa and (2) no discipline, retraining, or

---

[80] *City of Canton*, 489 U.S. at 389.

[81] *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

[82] Tex. Occ. Code § 1701.253(j).

[83] Dkt. 6 ¶¶ 46–47.

[84] *Miller v. Texas City*, No. 3:18-cv-284, 2019 WL 2189262, at *5 (S.D. Tex. May 21, 2019) (Edison, M.J.) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017)), *adopted by* 2019 WL 3082951 (S.D. Tex. July 15, 2019).

other consequence followed as a result.[85] That's it. Nothing about their allegations suggests an "extreme factual situation." What's more, ratification liability must be applied with the understanding that "[p]olicymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just their subordinates."[86] The plaintiffs offer no facts to connect the supposed ratification specifically to Chief Lee, and nothing about what the investigation showed. Besides, as the court has determined that no constitutional violation occurred, it's hard to imagine what discipline or retraining would've been required.

The plaintiffs' failure-to-train and ratification claims, which only conclusory allegations support, are dismissed.

### E.    State-Law Claims: Wrongful Death and Survival

The Texas Civil Practice and Remedies Code provides a cause of action for wrongful death.[87] Because the plaintiffs are "within the class of people entitled to recover under Texas's wrongful death statute," they can sue for wrongful-death and survival damages under § 1983 for injuries resulting from the deprivation of Chapa's

---

[85] Dkt. ¶¶ 46–47.

[86] *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004); *see also Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001).

[87] Tex. Civ. Prac. & Rem. Code §§ 71.002–.004.

constitutional rights.[88] But because these state claims turn on the viability of the § 1983 claims, and all those claims have been dismissed, these are also dismissed.

### F.     Dismissal of Claims Against Officer Breaux and Chief Lee

As noted above, the plaintiffs have named Officer Joey Breaux as a defendant, but he is not an employee of the City of Alvin and thus is not among this motion's movants.[89] He also hasn't been served. Likewise, Chief Lee was named as a defendant in the amended complaint, but has not been served either.[90] As it has been more than 90 days since the plaintiffs filed their amended complaint,[91] the court dismisses the claims against Officer Breaux and Chief Lee.[92] Moreover, because the plaintiffs have failed to state a claim against any of the defendants, including Officer Breaux and Chief Lee, the claims against them are dismissed with prejudice.

*     *     *

For all these reasons, the court grants the motion to dismiss (Dkt. 8). All the plaintiffs' claims against all the defendants are dismissed with prejudice.

---

[88] *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

[89] *See supra* note 15.

[90] *See supra* note 72.

[91] Dkt. 6, the plaintiffs' live pleading, was filed on December 14, 2020.

[92] *See* FED. R. CIV. P. 4(m).

Signed on Galveston Island on this 21st day of July, 2021.

_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE